UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRETT DANA GOSSETT, <br><br> Defendant. | No. CR03-5426 RBL <br><br> SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE |

An evidentiary hearing on a petition for violation of supervised release was held before the undersigned Magistrate Judge on August 20, 2009. The United States was represented by Assistant United States Attorney Bruce Miyake, and the defendant by Charles Johnston. The proceedings were digitally recorded.

The defendant was convicted of Conspiracy to Manufacture Methamphetamine and sentenced by the Honorable Ronald B. Leighton to 28 months in custody to be followed by 5 years of supervised release. On June 12, 2009 Mr. Gossett's supervised release was revoked based on a series of nine violations. The Court imposed a sentence of 60 days custody to be followed by a 48 month term of supervised release. Dkt. 66. Mr. Gossett was released from custody on June 19, 2009.

In a Petition for Warrant or Summons for Offender Under Supervision, dated July 23, 2009, U.S.

Summary Report of U.S. Magistrate Judge
as to Alleged Violations of Supervised Release
Page - 1

Probation Officer Matthew D. McDaniel asserted the defendant violated the following conditions of his supervised release:

1. Failing to notify the probation office at least 10 days prior to any change in employment, on or about July 22, 2009, in violation of standard condition of supervised release number six.
2. Failing to successfully participate in a Residential Reentry Center for up to 120 days, by being terminated from the program on July 23, 2009, in violation of a special condition of supervised release.

On July 30, 2009, the defendant made his initial appearance, was advised of the allegations and entered denials. The defendant was ordered detained pending an evidentiary revocation hearing which was held before the undersigned on Thursday, August 20 for two and one-half hours.

The United States called, as witnesses, Matthew McDaniel, the defendant's probation officer, Donald Casad, co-owner of Envision Property Management as well as the defendant's former employer, Joseph Miller, the Lead Case Manager of the Tacoma Residential Reentry Center (RRC), which housed Mr. Gossett, and, as a rebuttal witness, Carlos Sallinger, co-owner of Envision Property Management as well as its vice-president. The defendant also testified. The Court granted the defense request to exclude witnesses other than Mr. McDaniel. Exhibits 1 - 4 were received into evidence. After hearing the witnesses, observing their demeanor and assessing their credibility (as credibility was clearly an issue in the hearing), reviewing the exhibits and considering argument of counsel, I recommend the Court find the defendant to have committed violations 1 and 2 as alleged, and that the Court conduct a hearing limited to the issue of disposition.

**Stipulation by Counsel:** During the government's case, counsel for the defendant stipulated that Mr. Gossett had in fact been terminated from his employment. A remaining issue, in light of the stipulation, was a factual dispute as to the date Mr. Gossett was in terminated. This factual dispute impacted the issues with regard to both of the alleged violations.

**Utilizing a preponderance of the evidence standard, the undersigned finds the following facts:**

Mr. Casad, one of the owners of Envision Property Management, a company that does roofing,

1 gutters and remodels, hired the defendant in late June 2009. Mr. Casad made the hiring decision on the
2 recommendation of Mr. Sallinger (co-owner and vice-president) and after he met with Mr. Gossett. At
3 the time the defendant was hired, Mr. Casad knew that the defendant was a convicted felon and knew that
4 he was residing at the RRC.

5 Mr. Casad also owns some housing units on Veterans Drive in Lakewood and he agreed to rent
6 unit 7 to the defendant. Mr. Gosssett wanted this living unit for his family and as a place for him to reside
7 upon release from the RRC. The terms of the rental agreement required payment of $350/month cash
8 and Mr. Gossett working, on his own time, on the unit in exchange for the balance of the rent. This
9 arrangement was not as an employee of Envision Property Management but rather an agreement between
10 the Landlord (Donald Casad) and the tenant (Brett Gossett).

11 The beginning of the end occurred on Saturday, July 18, 2009 when Mr. Casad told the defendant
12 that he was fired. Mr. Casad subsequently rescinded the firing as Carlos Sallinger intervened on behalf of
13 the defendant and convinced Mr. Casad to give the defendant another opportunity, should the defendant
14 wish to take it. On that Saturday, Mr. Gossett was provided with a draft copy of Exhibit 1 and, in
15 addition, Mr. Casad read to the defendant, out loud, Exhibit 2. Mr. Casad attempted to hand these letters
16 to the defendant so he could read them himself and decide whether he wished to continue his employmnet
17 but he refused to take them. When he refused to take them from Mr. Casad, Mr. Casad placed on the
18 floor by Mr. Gossett. This recitation of events is corroborated by the testimony of Carlos Sallinger, who
19 was called by the government as a rebuttal witness following Mr. Gossett's testimony. Mr. Sallinger
20 recalls the confrontation between Mr. Casad and Mr. Gossett on July 18th and he made an effort to keep
21 things together. He convinced Mr. Casad to give Mr. Gossett another chance, if Mr. Gossett, after
22 reviewing Exhibits 1 and 2, agreed that he wanted to remain on the job. Mr. Gossett reviewed the papers
23 and agreed that he wanted to continue his employment.

24 However, on Monday, July 20, 2009 Mr. Casad told the defendant that it was clear this was not
25 going to work and "we are done." He told Mr. Gossett to pack up his stuff and he tried to hand some
26 documents, including Exhibit 2 (the letter of termination) to Mr. Gossett who refused to accept them. Mr.
27 Gossett testified that he accepted the letter but the Court finds that the credible testimony (from Mr.
28 Casad) is that he refused to accept the letter.

According to Mr. Casad, Mr. Gossett acknowledged that while he was fired from Envision Property Management he still had an agreement with Mr. Casad about the apartment (Unit 7) and he asked for the opportunity to do things around the home until the end of the month. According to Mr. Casad, the defendant did do some work around the living unit on Tuesday and Wednesday but he did not, during that time, perform any work for Envision Property Management as he had been terminated from that job on July 20th.

On Wednesday, July 22nd Mr. Casad asked the defendant, who was again at the living unit, if he had advised the RRC of his termination. Mr. Gossett said he had and they knew that he was out on a work search. On July 23rd Mr. Casad called the RRC and was told that Mr. Gossett was still on the schedule to work for Envision Property Management all week long. The RRC was not aware of the fact that he had been terminated prior to receiving the call from Mr. Casad. Mr. Gossett did not tell them about his change in employment even though he knew he was suppose to provide that information.

When Mr. Gossett entered the RRC he was made aware of its rules and requirements and had a copy of the handbook. Residents of the Tacoma RRC are not allowed to come and go as they please. Rather, they must submit a pass for a work search or for a work schedule which must be submitted in a timely manner and approved by staff before a resident is allowed to leave the facility. Mr. Gossett complied with this requirement and submitted a pass which indicated his worksite as well as his hours out of the facility related to his employment. Once a resident is employed, the facility requests a two-week work schedule (assuming the hours of employment are in fact regular). If anything changes, then notice of that change must be given in a timely manner so the RRC staff can verify the new information. Mr. Gossett submitted a two week work plan showing employment at Envision Property Management in Lakewood. He never notified the RRC of any change in employment or hours and he knew, according to his own testimony, that he was required to report any such changes. He intentionally failed to report the fact that he had been terminated from his employment on July 20, 2009.

Once Mr. Miller became aware of the fact that Mr. Gossett no longer had his job and that he was out of the facility unaccounted for, the RRC attempted to contact Mr. Gossett by phone. It is their policy to classify a resident as an absconder if a resident signs out, is unaccounted for and they are not able to reach him/her within 15 minutes. Mr. Gossett did contact the RRC within 30 minutes but, for various

reasons, it took him 3 ½ hours to return to the RRC.

Shortly after he arrived back at the RRC Mr. Miller met with Mr. Gossett. Mr. Gossett told Mr. Miller that even though his job had been terminated, his supervisor (Carlos Sallinger) told him to keep coming to work and he, the supervisor, would talk to Don Casad. Mr. Gossett gave the same testimony at the hearing. He also testified that he was confused regarding his employment status on July 20th as Mr. Casad told him he was fired but Mr. Sallinger told him to keep on coming to work and he would talk with Don Casad about his employment. Mr. Gossett testified that he was in a difficult position as the co-owners were giving him conflicting directives. This testimony, however, was not supported by the credible testimony of Mr. Sallinger or Mr. Casad and this court specifically finds that Mr. Gossett's testimony lacks credibility. Mr. Sallinger clearly testified that Mr. Casad makes the hiring and firing decisions and that Mr. Gossett knew that to be the case. Mr. Gossett knew he was hired by Mr. Casad even though he initially spoke with Mr. Sallinger about the availability of employment. He knew Mr. Sallinger did not have the authority to hire him and that the hiring decision could only be made by Mr. Casad. The undersigned does not accept Mr. Gossett's testimony that he was confused as to who had the authority over his employment. The credible testimony is that Mr. Sallinger attempted to work things out between Mr. Casad and Mr. Gossett on Saturday, July 18th and that on Monday, July 20th Mr. Gossett was fired. Contrary to Mr. Gossett's testimony, Mr. Sallinger did not attempt to intervene on Mr. Gossett's behalf on July 20th.

In cross-examination, Mr. Gossett testified that he did not really think that he was fired until July 23rd. This testimony is not credible. The Court finds that Mr. Gossett was fired on July 20th, that he knew he was fired on that date, and that he did not tell anyone at the RRC regarding the change in his employment, that he continued to leave the RRC under the same work pass after his employment had been terminated and that he did not advise his probation officer regarding his job termination.

According to Mr. Miller, when a resident is on abscond status the resident is terminated from the facility. However, with regard to Mr. Gossett his abscond status was terminated when he returned to the facility and then the decision was left to the Director in conjunction with probation. In Mr. Gossett's case, Director Cecil Gaffney did terminate him from the facility. The RRC makes a distinction between "public law" residents (referrals from probation) and Bureau of Prison residents. If there are violations by

Summary Report of U.S. Magistrate Judge
as to Alleged Violations of Supervised Release
Page - 5

1 BOP referred residents, the facility has a process they follow to determine if a violation has occurred.
2 That process is not followed when the resident is a public law resident. In that case, the issue is referred
3 to the probation officer and the determination of a violation is made by the court.

4    Matthew McDaniel has been a probation officer for 10 years and took over supervision of
5 Mr. Gossett in June 2008. He met with Mr. Gossett on July 2, 2009 for a supervision intake following his
6 most recent release from custody, and spent substantial time reviewing, in depth, the conditions of
7 supervision. Following the review of conditions, Mr. Gossett signed a copy of the June 12, 2009
8 judgment. With regard to the standard condition number six (regarding employment), Mr. McDaniel
9 testified that he reviewed the language of the standard condition and also verbally told the defendant that
10 he needed to advise probation immediately if there is any change in employment. Mr. Gossett, according
11 to his testimony, knew that he was suppose to report any change in employment to his probation officer.
12 He, however, took the position during his testimony that he did not know about any change in
13 employment until July 23rd. As already noted, the undersigned does not accept Mr. Gossett's statement
14 that he did not know he was fired until July 23rd. Mr. Gossett also acknowledged, during his testimony,
15 that Mr. McDaniel reviewed the requirements of satisfactorily participating at the RRC to include not to
16 break any of the rules of the RRC and he also acknowledged Mr. McDaniel's statement to him that there
17 would be "zero tolerance" due to his recent history.

18  Once Mr. McDaniel became aware of the defendant's termination from his job and confirmed that
19 the RRC also thought Mr. Gossett was employed, he prepared a report to the court and the defendant was
20 arrested on July 24th.

21  The defendant made the decision to testify at the hearing. There were a number of inconsistencies
22 in his testimony, many of which have already been identified. In addition, it was clear to the undersigned
23 that Mr. Gossett was not telling the truth regarding when he was fired by Mr. Casad. It is further the
24 undersigned's conclusion that he was using the July 23rd date in order to try and avoid a finding of any
25 supervised release violation. He falsely testified that Mr. Sallinger told him to keep on working even after
26 Mr. Casad fired him on July 20th. That clearly did not happen.

27 **Recommendation:**

28  I recommend that the Court find Mr. Gossett violated standard condition #6. It is clear that Mr.

1 Gossett knew that he had to report any change in conditions of his employment. He acknowledged being
2 told this and he attempted to avoid that requirement by alleging that he did not really know he was fired
3 until July 23rd. Mr. Johnston argued, on behalf of Mr. Gossett, that the defendant did not violate the
4 language of standard condition six because he could not have notified probation ten days before he was
5 fired - whatever date that the termination may have occurred. However, Mr. Gossett acknowledges that
6 he was required to advise not only his probation officer but also the RRC about any change in
7 employment and it is clear that he made the calculated decision not to give that information. The
8 undersigned therefore recommends the Court find that Mr. Gossett violated that standard condition.

With regard to Mr. Gossett's failure to successfully participate in a Residential Reentry Center, the undersigned recommends the Court find that Mr. Gossett committed this alleged violation as well. It is clear that Mr. Gosset was not following the rules of the RRC. He lost his job but did not advise anyone at the RRC about this change in employment when he knew he was require to do so. He also continued to leave the facility under a pass that was no longer valid and he knew that it was not valid.

I therefore recommend that the Court find the defendant to have committed these two violations and that the Court conduct a hearing limited to disposition. A disposition hearing on these violations has not yet been scheduled.

Pending a final determination by the Court, the defendant remains in custody.

DATED this 21st day of August, 2009.

Karen L. Strombom
United States Magistrate Judge

cc: District Judge: Ronald B. Leighton
AUSA: Bruce Miyake
Defendant's attorney: Charles Johnston
Probation Officer: Matthew D. McDaniel

Summary Report of U.S. Magistrate Judge
as to Alleged Violations of Supervised Release
Page - 7

Summary Report of U.S. Magistrate Judge
as to Alleged Violations of Supervised Release
Page - 8